**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JANEL LEIB,

       **Plaintiff,**

                                         **Civil Action 2:17-cv-00243**
      **v.**                            **Chief Magistrate Judge Elizabeth P. Deavers**

THOMPSON, DUNLAP &
HEYDINGER, LTD., *et al.*,

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Partial

Summary Judgment (ECF No. 23), Defendants' Memorandum in Opposition (ECF No. 27), and

Plaintiff's Reply (ECF No. 28). For the following reasons, Plaintiff's Motion is **GRANTED**.

## I.  BACKGROUND

A.  Procedural History

On March 24, 2017, Plaintiff Janel Leib initiated this lawsuit by filing a Complaint

against Defendants Thompson, Dunlap & Heydinger, Ltd. ("TDH") and Logan View LLC

("Logan View") (collectively, "Defendants") (ECF No. 1; the "Complaint" or "Compl."). In the

Complaint, Plaintiff alleges causes of action for (1) violations of the Fair Debt Collection

Practices Act ("FDCPA") (15 U.S.C. § 1692, *et seq.*); (2) violations of the Ohio Consumer Sales

Practices Act ("OCSPA") (Ohio Revised Code § 1345.01 *et seq.*); and (3) joint venture. (Compl.

¶¶ 39-59.)

On June 15, 2017, Plaintiff filed an Amended Complaint (ECF No. 16; the "Amended Complaint" or "Amended Compl."). Plaintiff asserts the same causes of action as in her original Complaint. (Amended Compl. ¶¶ 41-61.) Defendants filed an Answer to the Amended Complaint on June 28, 2017. (ECF No. 18.) On March 2, 2018, Plaintiff moved for summary judgment as to liability. (ECF No. 23.) Defendants filed their Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment on March 30, 2018. (ECF No. 27.) Plaintiff filed her Reply Brief in Support of Her Motion for Partial Summary Judgment on April 13, 2018. (ECF No. 28.)

B. Facts

Plaintiff, her son, and her ex-husband received medical services from Mary Rutan Hospital in Logan County, Ohio. (ECF No. 1, at p. 10 ["Small Claims Petition"]; Admitted ECF No. 18, ¶ 1.) Plaintiff incurred a debt stemming from these medical services. (ECF No. 1, Ex. B ["Mary Rutan Hospital Notice"]; Admitted ECF No. 18, ¶ 1.) On June 30, 2005, Mary Rutan Hospital filed a civil law suit against Plaintiff and her ex-husband in the small claims division of the Bellefontaine Municipal Court in Logan County, Ohio. (Small Claims Petition.) On August 16, 2005, a "Judgment by agreement" ("Judgment") was entered against Plaintiff in the small claims civil lawsuit. (ECF No. 1, at p. 13 ["Small Claims Judgment"]; Admitted ECF No. 18, ¶ 4.) Plaintiff and her ex-husband were jointly and severally liable on the Judgment in the amount of $1,180.42 plus court costs and interest. (Small Claims Judgment; Mary Rutan Hospital Notice.) Plaintiff's ex-husband was alone responsible for an additional amount of $502.29. (Small Claims Judgment.) The Bellefontaine Municipal Court Small Claims Division ordered Plaintiff to pay $25.00 per month beginning on September 26, 2005 and continuing the fourth Monday of every month until the Judgment was fully paid. (*Id.*)

Defendants instituted non-wage garnishment proceedings on the Judgment and obtained a court order for garnishment on January 18, 2006. (ECF No. 27, at p. 1; Aff. of Dane M. Hanna, ¶ 3.) On or about January 26, 2006, Plaintiff agreed by and through execution of a Statement of Assets, Liabilities, and Personal Earnings, to pay $25.00 per month starting on February 27, 2006. (Hanna Aff. ¶ 4.) Plaintiff maintains that at various times between September 2005 and March 11, 2009 (ECF No. 23, at p. 4) she made small payments toward the Judgment, and she contends she made no payments after March 11, 2009. TDH's payment ledger, however, indicates that Plaintiff made her final payment on April 8, 2009.[1] (ECF No. 23, Ex. 5 ["Payment Ledger"].)

On August 12, 2009, Defendant Logan View obtained a Court order for a debtor's examination of Plaintiff and her ex-husband.[2] (Hanna Aff. ¶ 5.) During the debtor examination on September 24, 2009, Plaintiff entered into a proposed payment schedule, agreeing to pay $10.00 per month beginning on October 23, 2009. (*Id.*) On April 1, 2011, Mary Rutan Hospital obtained a Court order for a debtor examination against Plaintiff, but the notice of the examination was not perfected because Plaintiff had changed addresses.[3] (*Id.* ¶ 6.) Plaintiff informed the court of her new mailing address on July 6, 2011. (*Id.*)

According to the parties, four "Notice[s] of Court Proceeding to Collect Debt" ("Notices") were sent to Plaintiff.[4] The dates of those Notices are as follows:

---

[1] The penultimate payment is listed under the date March 11, 2009. (Payment Ledger.)

[2] Plaintiff indicates in her Motion that it was Defendant TDH who filed the motion for the debtor's examination. (ECF No. 23, at p. 3.)

[3] Plaintiff indicates in her Motion that it was Defendant TDH who filed the motion for the debtor's examination. (ECF No. 23, at p. 3.)

[4] Plaintiff contends that Defendants sent these Notices (ECF Nos. 16 ¶ 30 & 23, at p. 4), while Defendants maintain that non-party Mary Rutan Hospital sent these Notices (ECF No. 27, at p. 2.).

- On or about October 2, 2013.  (*Id.* ¶ 7.)  Plaintiff returned this Notice on October 17, 2013.[5]  (*Id.*)

- On or about November 19, 2013.  (*Id.* ¶ 8.)  Plaintiff returned this notice on November 22, 2013.[6]

- On or about October 6, 2016.  (*Id.* ¶ 9.)

- On or about December 30, 2016.  (*Id.*)

Plaintiff contends that the first two Notices were not "executions" but rather 15-day warning letters.  (ECF No. 23, at p. 4.)  Plaintiff further contends that the second two Notices misrepresented that her wages could be garnished, misrepresented the amount due, and that the Notices were not authorized under the FDCPA and the OCSPA because the Judgment was dormant per Ohio Revised Code § 2329.07 at those times.  (ECF Nos. 16 ¶ 35-36 & 23, at p. 6–7.)

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address

---

[5] Plaintiff returned the Notice with the "Payment to Avoid Garnishment" section filled out, calculating her payment as $0.00.  (Hanna Aff. ¶ 7.)

[6] Plaintiff returned the Notice with the "Payment to Avoid Garnishment" section filled out, calculating her payment as $0.00.  (Hanna AFf. ¶ 8.)

another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.  ANALYSIS

Plaintiff moves for partial summary judgment on three issues (1) whether the judgment was dormant; (2) whether the Notices violated the FDCPA or the OCSPA; and (3) whether Defendants are entitled to assert their affirmative defenses, including the bona fide error defense. The Court will address each argument in turn.

A. Dormancy of the Judgment

Plaintiff first argues that, as a matter of law, the Judgment was dormant under Ohio Revised Code ("O.R.C.") § 2329.07.  (ECF No. 23, at p. 11–12.)  The effective date of the current version of the statute is April 6, 2017.  Plaintiff contends that the prior version of the statute controls because the facts alleged in the Amended Complaint took place before the effective date of the current version.  (*Id.*)  Defendants argue that under both the current and prior version, there is a genuine issue of law and material fact as to whether their efforts to collect the judgment against Plaintiff prevented dormancy.  (ECF No. 27, at p. 4.)

The prior version of O.R.C. § 2329.07 provided that a judgment became dormant after five years, unless there was (1) execution on the judgment, or (2) issuance and filing of a certificate of judgment for obtaining a lien upon lands and tenements as provided in §§ 2329.02 and 2329.04.  O.R.C. § 2329.07(A)(1).  Whether Plaintiff is entitled to judgment as a matter of law on this point hinges on two questions: (1) whether the Judgment ever became dormant, and (2) whether anything occurred to toll the dormancy of the Judgment.

Plaintiff argues that the Judgment became dormant on January 18, 2011 (five years after the Judgment was issued), and that none of the payments made by Plaintiff, actions taken by Defendants before that date, nor actions taken by Defendants after that date acted to delay the dormancy of the Judgment or revive it after becoming dormant.  (ECF No. 23, at p. 13.)  Furthermore, Plaintiff contends that even if her payments did toll the five-year period leading to dormancy, because those ended in 2009, the Judgment would have become dormant in 2014. (ECF No. 28, at p. 4.)  Defendants argue that the Judgment was never dormant because Plaintiff made payments through 2009 and Defendants sent Notices to Plaintiff regarding the Judgment in 2013 and 2016.  (ECF No. 27, at p. 5.)  Thus, Defendants claim that the five-year period began

when the final Notice was sent in December 2016, meaning the Judgment would not become dormant until December 2021. (*Id.*)

Here, the Court is persuaded that the Judgment became dormant as a matter of law and was never tolled by the parties' intervening actions. Under the previous version of O.R.C. § 2329.07, which Plaintiff argues controls, and Defendants do not dispute, the only actions that could toll the dormancy statute were execution of the judgment or issuance and filing of a certificate of judgment. The parties agree that this case does not involve the issuance and filing of a certificate of judgment. Rather, the key issue is whether the parties' actions constitute "execution" of the judgment.

The previous version of O.R.C. § 2329.07 did not define the term "execution," whereas the current version does.[7] In Defendants' Response, they cite Black's Law Dictionary which defines execution on a judgment as "seizing and selling of property of a debtor." (ECF No. 27, at p. 4; citing *Adlaka v. Montella*, 7th Dist. Mahoning No. 11 MA 133, 2013-Ohio-1276, ¶ 21.) Plaintiff agrees with this characterization of the definition. (ECF No. 28, at p. 3.) How this term is defined is dispositive in determining whether the Notices constitute an "execution" of the

───────────────

[7] The current version of O.R.C. § 2329.07 provides as follows: "Execution has the meaning defined in section 2327.01 of the Revised Code." O.R.C. § 2327.01 provides as follows:

(B)(1) An execution is a process of a court, issued by its clerk, the court itself, or the county board of revision with jurisdiction pursuant to section 323.66 of the Revised Code, and directed to the sheriff of the county.

(2) An execution includes a process of a court, issued by its clerk or the court itself, and directed to a private selling officer authorized in accordance with section 2329.151. 2329.152. or 5721.39 of the Revised Code.

(3) Executions may be issued to the sheriffs of different counties or different private selling officers at the same time.

Judgment, or at least steps to obtain execution of the Judgment. Plaintiff contends, and this Court agrees, that the definition of "execution" and the plain language of the dormancy statute indicate that informal attempts to collect on the debt did not toll the dormancy for the judgment against her. (*Id.*)

Defendants cite *Dempsey v. Bush*, 18 Ohio St. 376, *syllabus* at ¶ 2 (1868) for the principle that "as early as 1868, Ohio case law interpreted the Dormancy Statute and established the preservation of claims and in essence tolling the Dormancy Statute when the judgment creditor was taking steps to obtain execution of its judgment." (ECF No. 27, at p. 4.) Defendants insist that *Dempsey* establishes that a creditor's steps to obtain execution tolled the dormancy statute. (*Id.*) Plaintiff contends that *Dempsey* instead holds "that when a judgment lien was active at the time a partition action was filed, then the judgment became dormant during the pendency of the partition action, the lien was still valid." (ECF No. 28, at p. 3.) The Court agrees with Plaintiff's assessment.

The two issues in *Dempsey* were: (1) "Whether the payment by the sureties to the judgment creditors extinguished the judgment[,]" and (2) "Whether the priority of the judgment and the right to have it paid from the proceeds of the sale of the land were lost by the judgment becoming dormant during the pendency of the action." 18 Ohio St. at 381. The Supreme Court of Ohio held that the answer to both questions was no. *Id.* Thus, Defendants fall short in supporting their assertion that *Dempsey* established that the dormancy statute is tolled when the judgment creditor is "taking steps" to obtain execution of a judgment.

The parties also interpret other cases differently as well. (*See* ECF Nos. 27, at p. 4–5 & 28, at p. 3–5.) For instance, Defendants cite *Lawrence v. Belger*, 31 Ohio St. 175, 182–83 (1877) as support for the same principle for which they cited *Dempsey*, namely that informal

attempts or "taking steps" to collect on judgment tolls the statute. The issue in *Lawrence*, however, was "whether the action to marshal liens and enforce his judgment commenced by defendant in error, in March 1869, and passed to decree at the November term, 1870, of the common pleas of Guernsey county, prevented the running of the statute." It does not stand for the proposition that an informal attempt to collect tolls the dormancy statute. (*See* ECF No. 28, at p. 3–4.)

Defendants also rely on *Cincinnati Ins. Co. v. Adovasio*, 8th Dist. Cuyahoga No. 51060, 1986 Ohio App. Lexis 8666, *5. The issue in *Adovasio* was whether a judgment creditor's claim was preserved in the manner set forth in *Dempsey*. *Id.* at *4–5. The Eight District held that a judgment creditor's claim is preserved so that he may share in the proceeds as a priority creditor only if he was properly made a party while his judgment was alive, meaning not dormant. *Id.* at *5. The court made no discussion in *Adovasio* of any additions to the statutory list of actions that would toll dormancy. This case, therefore, does not support Defendants' assertion.

Defendants next cite *State v. Trammell*, 5th Dist. Stark No. 2016CA00017, 2016-Ohio-5200, ¶ 14 as support "that a judgment does not become dormant when a debtor agrees to a payment plan and makes payments on that plan." (ECF No. 27, at p. 4.) In *Tramell*, the court held that when a defendant signs and acknowledges a written agreement to pay costs in a criminal case, then the defendant's payments toll dormancy. As Plaintiff points out, however, the court in *Tramell* cited the dormancy statute with no explanation as to how it reached this result. (ECF No. 28, at p. 4.) The Court agrees with Plaintiff. The holding of *Tramell* is wholly unsupported and contradicts the plain language of the statute. Even if it were applicable in this case, dormancy would have been tolled only until five years after Plaintiff's last payment in

2009.  In that instance, the judgment became dormant in 2014, two years before the 2016 notices at issue here.

Defendants final assertion on the issue is that "Ohio case law. . . acknowledges that a judgment does not become dormant when the creditor is engaged in proceedings in aid of execution, including judgment debtor exams and issuing notices of garnishment."  (ECF No. 27, at p. 4–5.)  In support, Defendants cite two cases: *Adlaka v. Montella*, 7th Dist. Mahoning No. 11 MA 133, 2013-Ohio-1276, at ¶ 3, and *New Falls Corp. v. Leister*, 6th Dist. Lucas No. L-12-1367, 2013-Ohio-4954, at ¶ 10.  (*Id.*)  The current version of the dormancy statute does include both debtor's exams and notices of garnishment in its list of actions that toll dormancy.  O.R.C. § 2329.07.  However, the previous version of the statute, does not include debtor's exams in its list of actions that toll dormancy.  Moreover, as Plaintiff emphasizes, while an actual garnishment would toll the statute, no such garnishments occurred in this case.  (ECF No. 28, at p. 4.)  Regardless, the cited cases do not accurately support Defendants' assertion.  The holding of *Adlaka* is simply that a garnishment against one judgment debtor does not prevent the judgment from becoming dormant for the other judgment debtors.  2013-Ohio-1276, at ¶ 17.  Furthermore, *Leister* contains no discussion whatsoever on the issue of dormancy.  2013-Ohio-4954, at ¶ 10.  Rather, the issue in that case involved the statutory service requirement.  *Id.* ¶ 8.

Defendants have failed to come forward with authority to support their position that informal attempts to collect on the debt or Plaintiff's periodic payments tolled the dormancy of the debt under O.R.C. § 2329.07.  The Court finds that the Judgment in the instant action was dormant as a matter of law and never tolled.  Accordingly, the Plaintiff's Motion is **GRANTED** with respect to this issue.

B.  FDCPA and OCSPA Violations

Plaintiff contends that Defendants violated the FDCPA and the OCSPA by sending her Notices which threatened to garnish her wages, something Plaintiff claims could not legally be done if the Judgment was dormant.  (ECF No. 23, at p. 11–14.)  Defendants dispute that the Notices were illegal, claiming that the Judgment was not dormant.  (ECF No. 27, at p. 6–7.) Plaintiff also contends that the Defendants misrepresented the amount owed by Plaintiff in these Notices which constitutes another violation of the FDCPA and the OCSPA.  (ECF No. 23 at p. 14–15; ECF No. 28, at p. 8.)  Defendants dispute the claim that the amounts were incorrect. (ECF No. 27, at p. 7–9.)

"The purpose of the [FDCPA] is to eliminate abusive debt collection practices by debt collectors."  *Kline v. HomEq*, No. 3:07-CV-084, 2008 WL 11351581, at *3 (S.D. Ohio Nov. 25, 2008) (citing 15 U.S.C. § 1692(e) & *MacDermid v. Discover Fin.Servs.*, 488 F.3d 721, 734–35 (6th Cir. 2007)) (internal quotations omitted).  Furthermore, the FDCPA was enacted "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors."  *Id.* (citing *Staub v. Harris*, 626 F.2d 275, 276–77 (3d Cir. 1980)) (quoting Consumer Credit Protection Act, S. Rep. No. 95-382, at 1–2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process."  *Id.* (citations omitted).  "To state a claim under the FCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt

collection activity." *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465–66 (6th Cir.

2014) (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459–60 (6th Cir. 2013)).

Plaintiff contends that Defendants violated, at a minimum, the following sections of the

FDCPA: § 1692e(2), § 1692e(5), and § 1692e(10). Under the provisions of 15 U.S.C. §

1692e(2), a debt collector is prohibited from falsely representing "the character, amount, or legal

status of any debt[.]" Under 15 U.S.C. § 1692e(5), a debt collector is prohibited from

threatening "to take any action that cannot legally be taken or that is not intended to be taken."

Per 15 U.S.C. § 1692e(10), a debt collector is prohibited from using "any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer."

The October 2016 Notice and the December 2016 Notice, according to Plaintiff, "both

mention the Judgment, demand payment, and explicitly threaten that, unless [Plaintiff] takes

certain actions within 15 days, Defendants will attempt to execute on her wages." (ECF No. 23,

at p. 13.) Plaintiff also contends that the October 2016 and December 2016 Notices "falsely

represented to [Plaintiff] the legal status of the Judgment in violation of § 1692e(10), and

constitute a false representation or deceptive means to collect or attempt to collect any debt, in

violation of § 1692e." (*Id.*) Plaintiff further contends that the October 2016 and December 2016

Notices demanded an incorrect payment amount, thus violating § 1692f(1) and § 1692e(2) of the

FDCPA. (*Id.* at p. 14–15.)

"The OSCPA prohibits suppliers from committing either unfair or deceptive consumer

sales or practices." *Ball v. Ocwen Loan Servicing, LLC*, No. 1:12-CV-0604, 2012 WL 1745479,

at *8 (N.D. Ohio May 16, 2012) (citation omitted). A "supplier" is defined by O.R.C. §

1345.01(C): "a seller, lessor, assignor, franchisor, or other person engaged in the business of

effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." Defendants admit they are "suppliers" as defined by O.R.C. § 1345.01 inasmuch as they admit they are in the business of effecting consumer transactions. (ECF No. 23, at p. 11; Admitted ECF No. 18, ¶¶ 49–50.)

"Consumer transaction" is defined by O.R.C. § 1345.01(A): "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Defendants also admit that their attempts to collect on Plaintiff's debt constitute a "consumer transaction" as defined by O.R.C. § 1345.01. (ECF No. 23, at p. 11; Admitted ECF No. 18, ¶ 48.) Furthermore, under the OCSPA, proof of an intent to deceive is not required. *Thomas v. Sun Furniture & Appliance Co.*, 399 N.E.2d 567, 569 (Ohio Ct. App. 1978) (holding that proof of an intent to deceive is not a necessary element of O.R.C. § 1345.02 and noting that other courts have reached the same conclusion).

Plaintiff asserts that all Defendants' same actions that violate the FDCPA, violate the OCSPA as well because O.R.C. § 1345.02 prohibits unfair and deceptive acts. O.R.C. § 1345.02(A) ("No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.").

This Court agrees with Plaintiff that Defendants have violated both the FDCPA and the OCSPA by the language of the October 2016 and December 2016 Notices and the stated amounts due on the Notices. As discussed more fully above, this Court concludes as a matter of law that the Judgment at issue was dormant. Under Ohio law, unless a dormant judgment has been revived it "may not be enforced and has no legal effect" while dormant. *Cadles of Grassy*

*Meadows, II, LLC v. Kistner*, Ohio 6th Dist. No. L-09-1267, 2010-Ohio-2251, ¶ 9.[8]  Therefore,

the Notices misrepresented that Plaintiff's wages could be taken and threatened an action that

Defendants could not lawfully take under the FDCPA and OCSPA.  *See Wise v. Zwicker &*

*Associates, PC*, 780 F.3d 710, n.4 (6th Cir. 2015) ("[A]n affidavit asserting a right under an

unenforceable provision of a debt contract constitutes a misrepresentation of the debt and a threat

to take action that cannot legally be taken."); *Kelly v. Montgomery Lynch & Assocs., Inc.*, No.

1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) (granting summary

judgment for plaintiff and stating that defendant's threat to take legal action that could not

legally be taken violated both the FDCPA and OCSPA).

Regarding the stated amount due on the Notices, this Court finds that Defendants have

violated both the FDCPA and the OCSPA.  The October 2016 Notice demanded payment of

$962.53 and the December 2016 Notice demanded payment of $782.02.  (ECF No. 27, Ex. 8.)

However, Plaintiff's expert, a Certified Public Accountant, concludes in her report that if interest

continued to accrue without pause (*i.e.*, the judgment never became dormant) then Plaintiff owed

only $909.92 on October 6, 2016 and $917.80 on December 30, 2016.  (ECF No. 23, Ex. 6.)  The

expert further concludes that if interest had stopped accruing on January 18, 2011, the date the

judgment became dormant, then Plaintiff owed only $716.38 on October 6, 2016 and $716.38 on

December 30, 2016.  (*Id.*)[9]  Plaintiff posits "that Defendants did not take into account that

---

[8] Defendants contend that case law supports the supposition that a dormant judgment "remains collectible."  (ECF No. 27, at p. 6.)  However, as Plaintiff accurately points out, the case law cited by Defendants "merely holds that dormancy may not 'remove or discharge' a judgment, which remains subject to a possible revivor, within 10 years of dormancy" but "[i]t does not conflict with. . . case law [which holds] that a dormant judgment is unenforceable." (ECF No. 28, at p. 7, citing *Geagua Sav. Bank v. Nall*, No. 98-G-2152, 1999 WL 960574, at *8 (Ohio Ct. App. Sept. 30, 1999) and *Monroe v. Berger*, 297 B.R. 97 (S.D. Ohio 2003).)

[9] "[I]nterest shall not accrue and shall not be computed from the date the judgment became dormant to the date the judgment is revived." O.R.C. § 2325.18(B).

payments by [Plaintiff's] ex-husband exceeded the portion of the debt that he alone was responsible for, and therefore began reducing [Plaintiff's] debt (the joint portion) before the October 2016 Notice." (ECF No. 23, at p. 14 n. 2.)[10]

Defendants attempt to explain the discrepancies in amount owed by contending that, while the calculations in the expert report are mathematically accurate, the report used the dates written on the checks to make the calculations, as opposed to the dates the checks were received and cashed by Defendant Logan View. (ECF No. 27, at p. 8.) However, because the Judgment was dormant at that time, interest was *not* accruing regardless of the date used to calculate it. Thus, Defendants' argument to explain the discrepancies is unavailing.[11]

Defendants further contend that "none of the cases cited" by Plaintiff "support that an alleged incorrect amount violates the FDCPA and the OCPA [sic] apply to the facts of this case." (*Id.*) Rather, Defendants maintain that all the cases "involved a creditor trying to collect interest that was unauthorized or excessive." (*Id.*) Defendants complain that this case is different because the *amount* of interest is not at issue. (*Id.* at p. 8–9.) Plaintiff responds that "[i]f overstating and trying to collect unauthorized interest is deceptive and unfair, then certainly overstating and trying to collect an inflated amount of debt overall is too." (ECF No. 28, at p. 9.) This Court once again agrees with Plaintiff. Furthermore, as Plaintiff points out, "[t]he plain

---

[10] Defendants do not dispute that the payment plan would be that Plaintiff's payments were to be applied to her judgment, and Plaintiff's ex-husband's payments were first to be applied to his judgment, then once his judgment was paid off, his payments were to be applied to the balance of the joint and several judgment. (ECF No. 27, at p. 8; Bishop Aff. at ¶ 6.)

[11] Plaintiff points out that "even if interest had been accruing, the amount of interest at issue would be far less than the discrepancies at issue." (ECF No. 28, at p. 9; ECF No. 28, Ex. 6 (noting that the expert report shows that only $7.88 in interest would have accrued from October 6, 2016 to December 30, 2016 if the Judgment were not dormant).)

language of the FDCPA explicitly prohibits a debt collector from falsely stating the amount of the debt." (*Id.*; 15 U.S.C. § 1692e(2)(A).)[12]

In sum, on the issue of whether the Notices violated the FDCPA or the OCSPA, the Court finds that there is no genuine issue of issue of material fact. The Court concludes that the Notices violated both the FDCPA and the OCSPA because the Judgment was dormant at the time the Notices were sent in 2016, they misrepresented that Defendants could take an action that they could not lawfully make and were attempts to collect on an amount not due. Accordingly, the Plaintiff's Motion is **GRANTED** with respect to this issue.

C. Affirmative Defenses

Affirmative defenses, including the bona fide error defense, are available to debt collectors stemming from violations of the FDCPA and the OCSPA. *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."). "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d

---

[12] Other courts have recognized violations under similar circumstances. *See, e.g., Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006) (collection agencies and their lawyers are strictly liable for misstating the amount of the debt under section 1692e(2)(A) without regard to their knowledge of the mistake) and *Crafton v. Law Firm of Jonathan B. Devine*, 957 F. Supp. 2d 992, 997 (E.D. Wis. July 9, 2013) (holding that a letter to consumer which provided an inaccurate amount of the debt was a material misrepresentation per the plain language of the FDCPA).

606, 614 (6th Cir. 2009) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476–77 (6th Cir. 2008)).

In their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendants contend that there is a genuine issue of material fact as to whether any alleged FDCPA or OCSPA violation resulted from a bona fide error. They include affidavits from two individuals in which the affiants discuss procedures purporting to support their bona fide error defense. (ECF No. 27, at p. 9–10.) Defendants, however, withheld the factual information contained in the affidavits from their responses to Plaintiff's discovery requests.[13] (ECF No. 28, at pp. 1-2.) Plaintiff maintains that, had Defendants disclosed this information in discovery, she would have deposed these affiants and conducted further discovery into the computer program, how Defendants used it, and other instances of similar conduct. (ECF No. 28, at p. 2.) Discovery has long since closed and Plaintiff has already filed her Motion for Summary Judgment.

Courts have stricken or disallowed evidence withheld during discovery but later put before the Court. *See Armco, Inc. v. Burns & McDonnell, Inc.*, 809 F. Supp. 43 (S.D. Ohio, Dec. 7, 1992) (excluding expert witness testimony that was withheld prior to trial pursuant to a privilege); *Weimer v. Anzevino*, 122 Ohio App. 3d 720 (7th Dist. 1997) (holding that trial court did not abuse its discretion in excluding expert witness testimony on basis that plaintiff had failed to disclose identity of the expert in response to a discovery request); *Vinci v. Ceralo*, 79 Ohio App. 3d 640 (8th Dist. 1992) (holding that defendant's failure to disclose the name of a witness was a discovery violation properly sanctionable by exclusion of testimony).

_____

[13] Defendants did not seek leave to file a Sur-Reply to address this issue and have not otherwise moved the Court to challenge Plaintiff's assertion.

"This Court has a duty to conduct trial with a view toward eliciting truth, obtaining justice, and checking counsel in any effort to obtain an unfair advantage." *Armco*, 809 F. Supp. at 45. Accordingly, this Court will not consider Defendant's affidavit evidence in its determination of Plaintiff's Motion. Without these affidavits, Defendants have put forth no facts or evidence that support its bona fide error defense. Therefore, there is no genuine issue that Defendants are not entitled to assert the bona fide error defense.

Even if this Court were to consider Defendants' affidavits in its determination of Plaintiff's Motion, Defendants cannot prevail on the bona fide error defense. Defendants still do not admit they made any "error" regarding the dormancy of the Judgment; it remains Defendants' position that the Judgment was not dormant. (*See* TDH's Responses to Discovery, RFA No. 7; Logan View's Responses to Discovery, RFA No. 7; ECF No. 18, Defendants' Answer at ¶ 2, denying ¶¶ 29, 36, and 37 of the Amended Complaint.) Plaintiff maintains that if "Defendants still believed the judgment was not dormant after being sued, [this shows] that their processes are insufficient to avoid that kind of error." (ECF No. 28, at p. 10.) This Court agrees with Plaintiff's assessment. Even if this Court considers their affidavits, the bona fide error defense fails as a matter of law under the circumstances here.

Regarding the other affirmative defenses Defendants contend that there is a genuine issue of law and material fact as to whether Plaintiff has standing to bring this matter and as to whether Defendants can assert the defenses of waiver and estoppel. (ECF No. 27, at p. 11.) Defendants maintain that the Sixth Circuit Court of Appeals has limited a plaintiff's FDCPA claim when the plaintiff could not establish any form of injury. (*Id.*) They insist that Plaintiff has no standing because she suffered no injury or reliance. Defendants cite *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018) as support. (*Id.*)

Defendants' reliance on *Hagy* is misplaced. *Hagy* does not hold that reliance on a misrepresentation is required to show injury. Rather, *Hagy* held that not every statutory injury created by Congress automatically creates Article III standing. 882 F. 3d at 620–21. In *Hagy*, a debt collector failed to disclose that a communication was from a debt collector on a letter and specifically indicated that it did not intend to collect. The court found no injury and no standing for that plaintiff. Here, by contrast, Defendants threatened to garnish Plaintiff's wages, misrepresented the amount due and caused Plaintiff to fill out a form under the threat that her wages would be garnished. As Plaintiff points out, "[t]hat is a far cry from the facts here[.]" (ECF No. 28, at p. 10.)

Plaintiff claims injury involving "worry, stress, wasted time, etc." which may be compensable under the FDCPA and CSPA." *See Baiocchetti v. Smith, Dean & Associates, Inc.*, No. 3:11-CV-0795, 2012 WL 3278146, at *2 (D. Conn. Jan. 25, 2012) (finding plaintiff's allegations of emotional distress including fear of answering her phone, constantly looking over her shoulder, worry about being arrested, and embarrassment to be "completely credible"); *Whitaker v. M.T. Automotive, Inc.*, 855 N.E.2d 825, 833 (Ohio 2006) (finding that plaintiff did not have to satisfy elements of negligent or intentional infliction of emotional distress to recover for emotional distress under CSPA). Furthermore, Plaintiff has not moved for summary judgment on the question of damages, making the issue inapposite here.

Regarding waiver and estoppel, Defendants contend that Plaintiff was "extensively involved" in the process "from the initial Judgment to executing the final Payment to Avoid Garnishment in December 2016[,]" yet never "assert[ed] that she disputed she owed moneies or that the amount of the indebtedness claimed on the Notices was incorrect." (ECF No. 27, at p.

11.)  Defendants further contend that they are, therefore, entitled to assert defenses of waiver and estoppel.  (*Id.*)

"The essential elements of a waiver are an existing right, benefit, or advantage; knowledge, actual or constructive, of the existence of such right, benefit, or advantage; and an actual intention to relinquish it or an adequate substitute for such intention."  *Weaver v. Weaver*, 522 N.E.2d 574, 576 (Ohio 1987).  Defendants have failed to point to any evidence in the record that indicates that Plaintiff had an actual intention to relinquish the claims in her Complaint. Defendants' affirmative defense of waiver, therefore, fails as a matter of law.

"A party triggers equitable estoppel by conduct inconsistent with a position later adopted that prejudices the rights of the other party who detrimentally relied on the prior conduct." *Parsley v. City of Columbus, Ohio Dept. of Public Safety*, 471 F. Supp. 2d 858, 868 (S.D. Ohio, Oct. 3, 2006) (citing *Heckler v. Cmty. Health Servs. Of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)).  Furthermore, a party must show:

(1) conduct or language amounting to a representation of material fact;

(2) awareness of true facts by the party to be estopped;

(3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

(4) unawareness of the true facts by the party asserting the estoppel; and

(5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Id.* (citing *Tregoning v. American Comty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993)).  In the instant action, however, the misrepresentations were made by Defendants, not by Plaintiff. Accordingly, Defendants have pointed to no evidence in the record supporting an estoppel defense.  Therefore, Defendants' affirmative defense of estoppel fails as a matter of law.

Because Defendants cannot prevail on their affirmative defenses, Plaintiff's Motion is **GRANTED** with respect to this issue.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. (ECF No. 23.) The Clerk is **DIRECTED** to enter judgment against Defendants, jointly and severally, for liability on Plaintiff's claims under the FDCPA and OCSPA. The Court will set a date for an evidentiary hearing on the issue of damages, unless the parties come to an agreement on this issue in the interim.

**IT IS SO ORDERED.**

Date: January 29, 2019                                   _____/s/ *Elizabeth A. Preston Deavers*_____
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE